Srinivasan, Circuit Judge, concurring:
 

 I fully join Judge Wilkins's opinion, which explains that if, as the parties assume, Restatement (Second) of Foreign Relations Law § 66(f) sets out the scope of common-law, conduct-based immunity for foreign officials, the defendants in this case do not qualify for that immunity. I also agree with the portion of Judge Randolph's concurrence in the judgment explaining that the Torture Victim Protection Act (TVPA) subjects foreign officials to liability for acts undertaken in an official capacity and thus displaces any common-law, conduct-based immunity that might otherwise apply in the context of claims under that Act.
 
 See
 
 Concurring Op. 3-4. In my view, therefore, the defendants in this case do not qualify for immunity for either of two reasons: (a) as Judge Wilkins explains, they fall outside the scope of the common-law, conduct-based immunity contemplated by Restatement § 66(f); or (b) as Judge Randolph explains, they fall within the scope of liability contemplated by the TVPA per the allegations in the complaint.
 

 Randolph, Senior Circuit Judge, concurring in the judgment:
 

 The court assumes that the immunity of the defendant foreign officials under the Torture Victims Protection Act turns on "the common law" and that the Restatement (Second) of Foreign Relations Law of the United States § 66(f) (1965)
 
 [1]
 
 embodies the governing common law.
 

 I think both assumptions are dubious. Neither has been tested in an adversary proceeding.
 

 Consider first the proposition that, as the court assumes, Restatement (Second) § 66(f)
 
 [2]
 
 recites the common law. The common law is "the dominant consensus of common-law jurisdictions."
 
 Field v. Mans
 
 ,
 
 516 U.S. 59
 
 , 70 n.9,
 
 116 S.Ct. 437
 
 ,
 
 133 L.Ed.2d 351
 
 (1995).
 
 [3]
 
 This Restatement is
 titled "Foreign Relations Law of the United States," but it does not pretend to be a statement of "common law." Instead it sets forth "rules of international law as distinguished from the rules of domestic law," "[e]xcept as otherwise indicated." Restatement (Second) § 2(2).
 
 [4]
 
 The immunity provision of Restatement (Second) § 66(f) contains no such exception, express or implied.
 

 Restatement § 66(f) appears to be a distillation of scant case law in this country, international treaties to which the United States may or may not be a party, the writings of law professors here and abroad, negotiated settlements of international disputes, and other non-judicial sources such as actions of our Department of State and perhaps comments in meetings of the American Law Institute. Restatement (Second) § 1, comment
 
 c
 
 , explains that the "paucity of adjudicated decisions in the international field has led to greater reliance on non-judicial sources than in domestic law."
 
 See also
 
 Restatement (Second) § 2, cmt.
 
 f
 
 .
 

 If Restatement (Second) § 66(f) is not common law, and does not purport to be, how then does one discover the real common law? The answer is not obvious. It may well be that there is not now and never was any common law of immunity for foreign officials sued in the United States. "The lower courts will find only minimal guidance from [pre-1976] decisions involving the common law immunity of foreign officials. Those cases were 'few and far between,' and none addressed claims of human rights abuses." Stephens,
 
 supra
 
 , at 2671 (footnote omitted) (quoting
 
 Samantar v. Yousuf
 
 ,
 
 560 U.S. 305
 
 , 323,
 
 130 S.Ct. 2278
 
 ,
 
 176 L.Ed.2d 1047
 
 (2010) ).
 
 [5]
 

 Even if there were a common law of immunity for foreign officials and even if the Restatement (Second) § 66(f) stated it, the question remains: does the Restatement's version of the common law control actions such as this arising under the Torture Victims Protection Act of 1991,
 
 28 U.S.C. § 1350
 
 note? A foreign official may be immune from suit pursuant to the Restatement's § 66(f) only with respect "to acts performed in his official capacity." Here the Democratic Republic of the Congo notified the State Department that the defendants' alleged torture actions were "undertaken in their official capacities."
 

 That may have satisfied a prerequisite for immunity under the Restatement, but it also amounted to a confession satisfying one of the prerequisites for liability under the Torture Act. Section 2(a) of the Torture Act does away with the Nuremberg defense, and more. Pursuant to § 2(a) an "individual who, under actual or apparent authority, or color of law, of any foreign nation ... subjects an individual to torture shall, in a civil action, be liable for damages to that individual."
 
 28 U.S.C. § 1350
 
 note § 2(a)(1). The Torture Act thus imposes liability for actions that would render the foreign official eligible for immunity under the Restatement. When there is such a clear conflict between statutory law and judge-made common law, the common law must give way.
 
 See
 

 City of Milwaukee v. Illinois
 
 ,
 
 451 U.S. 304
 
 , 314-15,
 
 101 S.Ct. 1784
 
 ,
 
 68 L.Ed.2d 114
 
 (1981).
 
 [6]
 

 I leave to the last a discussion of the Supreme Court's decision in
 
 Samantar v. Yousuf
 
 and our court's decision in
 
 Manoharan v. Rajapaksa
 
 ,
 
 711 F.3d 178
 
 (D.C. Cir. 2013) (per curiam).
 

 Samantar v. Yousuf
 
 interpreted the term "foreign state" in the following provision of the Foreign Sovereign Immunities Act (FSIA): "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States ...."
 
 28 U.S.C. § 1604
 
 . The Supreme Court held that "foreign state" did not include foreign officials. In so holding the Court did "not resolve the dispute among the parties as to the precise scope of an official's immunity at common law."
 
 560 U.S. at 321
 
 ,
 
 130 S.Ct. 2278
 
 .
 
 [7]
 
 Although the plaintiffs sued under the Torture Act, the Court did not address the conflict between the Torture Act and Restatement § 66(f).
 

 As to our decision in
 
 Manoharan v. Rajapaksa
 
 , the case involved head-of-state immunity. As the court discusses in this case, Maj. Op. 145, there are two types of immunity for foreign officials - status-based, as in
 
 Manoharan
 
 , and conduct-based, as in the case before us. Head-of-state immunity and other status-based immunities are the predominant focus of U.S. case law, sparse as it is, related to foreign officials.
 
 See
 

 Yousuf v. Samantar
 
 ,
 
 699 F.3d 763
 
 , 772 (4th Cir. 2012) ; Restatement (Second) § 66, reporter's note 1. It is well established that when the executive provided a "suggestion of immunity," a head of state would be granted immunity by the courts.
 
 See, e.g.
 
 ,
 
 Ye v. Zemin
 
 ,
 
 383 F.3d 620
 
 , 625-27 (7th Cir. 2004). These status-based immunities also derive from international treaties such as the Vienna Convention on Diplomatic Relations and United Nations Convention on Special Missions. Vienna Convention on Diplomatic Relations, art. 31, Apr. 18, 1961, 23 U.S.T. 3227 (diplomatic immunity); S. Rep. No. 102-249, at 8 (1991) (citing United Nations Convention on Special Missions, art. 21(1),
 
 adopted
 
 Dec. 8, 1969, 1400 U.N.T.S. 231 (entered into force June 21, 1985) ) (head of state immunity). The legislative history of the Torture Act indicated that these immunities would survive. H.R. Rep. No. 102-367, at 5 (1991), 1992 U.S.C.C.A.N. 84, 88 ("[N]othing in the TVPA overrides the doctrines of diplomatic and head of state immunity.").
 

 The conflict between the Torture Act's basis for liability and the Restatement's basis for immunity from liability was neither briefed nor argued, although it should have been. The immunity of foreign officials may be a jurisdictional question.
 
 See
 

 Belhas v. Ya'alon
 
 ,
 
 515 F.3d 1279
 
 , 1281, 1283 (D.C. Cir. 2008). I agree with the court that if the Restatement did apply, the defendants were not immune.
 

 The Restatement (Second) was superseded by the Restatement (Third) of Foreign Relations Law of the United States (1987).
 
 See
 
 Beth Stephens,
 
 The Modern Common Law of Foreign Official Immunity
 
 ,
 
 79 Fordham L. Rev. 2669
 
 , 2678 n.45 (2011). There may be a plausible but oddly unexplained reason for invoking the older Restatement version and ignoring the newer. I see no need to get into this.
 

 "The immunity of a foreign state under the rule stated in § 65 extends to
 

 (a) the state itself;
 

 (b) its head of state and any person designated by him as a member of his official party;
 

 (c) its government or any governmental agency;
 

 (d) its head of government and any person designated by him as a member of his official party;
 

 (e) its foreign minister and any person designated by him as a member of his official party;
 

 (f) any other public minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state;
 

 (g) a corporation created under its laws and exercising functions comparable to those of an agency of the state."
 

 Restatement (Second) § 66.
 

 Another definition of the common law, in a highly regarded posting in the Federal Register, is this: "The common law is a body of judge-made substantive rules, principles, and prescribed standards of conduct." Federal Trade Commission, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking,
 
 29 Fed. Reg. 8324
 
 , 8365 (July 2, 1964) ;
 
 see also
 
 A. Raymond Randolph,
 
 Before Roe v. Wade: Judge Friendly's Draft Abortion Opinion
 
 ,
 
 29 Harv. J.L. & Pub. Pol'y 1035
 
 , 1044 (2006) ("The common law judge analyzes past judicial decisions, considers the reasons behind the decisions, comes up with a principle to explain the cases, and then applies that principle to a new case.").
 

 "Our duty is to enforce the Constitution, laws, and treaties of the United States, not to conform the law of the land to norms of customary international law."
 
 United States v. Yunis
 
 ,
 
 924 F.2d 1086
 
 , 1091 (D.C. Cir. 1991).
 

 "The courts will not be able to turn to pre-FSIA common law decisions and commentary to determine the scope of the modern common law of official immunity in part because the cases were sparse, leaving a few guidelines but no substantial body of law."
 
 Id.
 
 at 2702. "Pre-FSIA" means before enactment of the Foreign Sovereign Immunities Act of 1976.
 

 "It has often been said that statutes in derogation of the common law are to be strictly construed. That is a relic of the courts' historical hostility to the emergence of statutory law." Antonin Scalia & Bryan A. Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 318 (2012).
 

 The Court "express[ed] no view on whether Restatement § 66 correctly sets out the scope of the common-law immunity applicable to current or former foreign officials."
 
 Id.
 
 at 321 n. 15,
 
 130 S.Ct. 2278
 
 .